The Honorable Tommy Thompson State Representative
15 Ashley Drive Morrilton, Arkansas 72110-2287
Dear Representative Thompson:
You have requested my opinion on several questions concerning the Trauma System Act, which was originally enacted under Act 559 of 1993, and most recently amended by Act 393 of 2009.[1] As background for your questions, you state:
 The Trauma System will require the transport of trauma patients to a designated center, often times outside of the service area of that ambulance service. The reality of this will, for many rural services with few resources, mean leaving the area without service for an extended time. While many services have a "backfield" arrangement with a neighboring service, that service may not be able to respond immediately.
 In the above situation, an ambulance service, by leaving their contracted area without coverage, would be in violation of their franchise agreement, or in violation of the Trauma System rules if they did not transport as the Trauma Call Center determined. *Page 2 
Against this backdrop, you ask:
 1. What are the legal ramifications to a private service versus a municipally owned/operated service?
 2. What are the legal ramifications to service that might be owned and operated by a city, and subsidized by the county versus a private service or a municipally owned service?
 3. Are any liability issues facing any type of service?
 4. Would the Trauma System be responsible for additional ambulances throughout the State for the backfield cover needs?
 5. If the answer to #4 is yes, would this not be a violation of the current franchise system for contracting for ambulance service?
 6. If the answer to #4 is no, who is responsible?
RESPONSE
I am unable to opine in response to your first three questions due to their inherently factual nature. Regardless of their context, liability-related issues are generally factually intensive and require knowledge of the specific surrounding circumstances. I lack the resources and the authority to develop the myriad factual considerations that bear on such issues.
In addition, these particular questions concerning the possible legal consequences of participating in the Trauma System require guesswork and speculation, and may turn in part on contractual terms along with other facts pertinent to the ambulance service at issue. Questions of this nature are simply outside the scope of an Attorney General opinion. They must be answered instead on the local level, ideally with the assistance of local counsel. Local counsel will be situated to assess what appear to be the practical implications of participation in the Trauma System, and to advise regarding a course of action in light of that assessment.[2] *Page 3 
Question 4 — Would the Trauma System be responsible foradditional ambulances throughout the State for the backfield coverneeds?
I believe the answer to this question is "no" under the Trauma System Act as currently structured. According to my understanding, requiring a backfill plan as a condition of receiving Trauma System grant funds was a regulatory means of addressing the concern you have identified regarding emergency medical service providers' existing service obligations. In my opinion, the Arkansas Department of Health has reasonably imposed this requirement pursuant to its clear authority to develop and implement the trauma care system.[3] Presumably, the Department recognized that certain grant recipients may be faced with the situation you have described, and that it was necessary to address that situation in order to ensure the efficacy of the Trauma System which depends in the first instance upon the participation of as many emergency medical service providers as possible. However, given that participation in the Trauma System is not mandatory, [4] I see no basis for concluding that the System bears responsibility for additional ambulance service in that situation.
Question 5 — If the answer to #4 is yes, would this not be aviolation of the current franchise system for contracting for ambulanceservice?
A response to this question is unnecessary in light of my negative response to Question 4.
Question 6 — If the answer to #4 is no, who is responsible?
There is no controlling state law on this issue. For this reason, I am unable to opine in response to this question. It may well be that this is a matter that calls for legislative action. But I cannot, in the absence of any controlling state law provision, undertake to clarify the matter. *Page 4 
I regret that I am unable to offer assistance in this respect. If there are questions of state law interpretation, I will of course address the matter and provide a timely response.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The Trauma System Act, as amended, is codified at A.C.A. §§ 20-13-801 through-821 (Repl. 2005 and Supp. 2009).
[2] The Trauma System Act provides for the allocation of funds by the Arkansas Department of Health in the form of grants to ambulance providers and other health care providers who choose to participate in the trauma system. A.C.A. §§ 20-13-804 and-809 (Supp. 2009). As a condition of receiving grant funds, an applicant must, among other things, use the statewide call center and establish at least one "backfill" plan. See "Purpose Scope of Work Emergency Medical Services Grant" (available at http://www.healthy.arkansas.gov). I assume you are referring to this backfill plan when you speak of a "backfield arrangement."
[3] See A.C.A. § 20-13-804(a) (Supp. 2009).
[4] See n. 2, supra.